UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

| | |
|---|---|
| United States of America, | Criminal No. 08-125(1), (3) (JNE/JJG) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Jesus Gutierrez-Cortez, and Arturo Rodriguez-Hernandez, | |
| Defendants. | |

_____

The above-entitled matter came before the undersigned on June 5, 2008, for resolution of pre-trial motions. Thomas H. Hollenhorst, Assistant United States Attorney, appeared for the Government. Andrew S. Birrell appeared for Jesus Gutierrez-Cortez ("Gutierrez"). Daniel M. Scott appeared for Arturo Rodriguez-Hernandez ("Rodriguez"). This case has been referred to this Court for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

Before the Court are Gutierrez's motions to suppress evidence and statements (Doc. Nos. 38 through 41), for severance (Doc. No. 54), and to dismiss indictment for duplicity (Doc. No. 67). Also before the Court are Rodriguez's motions to suppress statements (Doc. No. 59), for severance (Doc. No. 60), and to dismiss indictment for multiplicity (Doc. No. 64). For the reasons set forth below, the Court recommends that the motions be denied.

**I.     BACKGROUND**

On April 23, 2008, the four Defendants in this case were indicted for conspiracy to distribute, and conspiracy to possess with intent to distribute, cocaine and methamphetamine. The Indictment arises out events alleged to have occurred on March 31 and April 1, 2008.[1]

On March 31, 2008, Gutierrez told a confidential informant that he had received a large shipment of cocaine and was willing to sell some of it. On April 1, 2008, two informants arranged to meet Gutierrez at a St. Paul Burger King parking lot to buy a half kilogram of cocaine. The two informants met Gutierrez at the Burger King parking lot and followed him to a St. Paul apartment building on McLean Street. The informants and Gutierrez exited their vehicles, and Gutierrez told the informants that he had to go up to the apartment to "get it."

Gutierrez then entered the rear door of a nearby McLean Street apartment building. Police saw him pass by a landing leading to the third floor of the building. Gutierrez later returned to the informants empty-handed.

Police saw Defendant Santos Mercado-Contreras ("Mercado") exit a Ford van and enter the same apartment building. An unidentified amount of time later, Mercado left the apartment building carrying an object wrapped in a towel in a plastic grocery bag. Mercado entered the driver's side of the Ford van, which was also occupied by Rodriguez. Police then saw Gutierrez and Defendant Jose Rodriguez-Lopez ("Lopez") enter the Ford van.

The informants followed the Ford van a few blocks. The van stopped, and Lopez brought the object wrapped in the towel to the informants' vehicle. Lopez told the informants that they needed to meet later, because police may be in the area. Lopez returned the object wrapped in

---

[1] The background described herein is based on the allegations in the Complaint and testimony from the June 5, 2008, motions hearing.

the towel to the van. Gutierrez and Lopez then left the area on foot. Mercado and Rodriguez, still in the van, drove away.

Shortly thereafter, the police stopped the van within a block of the McLean apartment building. They seized a brick of cocaine from the van and arrested the four Defendants.[2] Police found two keys on Mercado during his arrest.

Police believed that Mercado had used these keys earlier to enter the McLean apartment building to obtain cocaine. Police officers used one of the keys to enter the McLean apartment building. They then tried the other key on two of the six third floor apartment doors. The key fit in the door of apartment 303, the second door the officers tried. They entered apartment 303 and looked for people. They did not search drawers, ovens, or closets, but rather looked "for bodies." They did not find anyone, and left.

Later the same day, April 1, 2008, police obtained and executed a search warrant on apartment 303 in the McLean apartment building. *See Motions Hearing Exhibits,* Govt. Ex. 2 (April 1, Ramsey County District Court search warrant). They found approximately 3,143 grams of methamphetamine.

Two days later, two police investigators met with the manager of the McLean apartment building. They showed her a photo array. *Motions Hearing Exhibits*, Govt. Ex. 3. It consisted of a front page with six photos, and six additional pages, each showing one picture and containing identifying information about the individual depicted. *Id.* An investigator first showed the apartment manager the larger individual photographs, but covered the identifying information with his hand. *Motions Hearing Tr.*, pp. 22-23. He then showed her the front page with the six-person spread. The apartment manager stated that she had seen individual No. 3 in

---

[2] Gutierrez and Lopez were on foot when arrested; Rodriguez and Mercado were in the Ford van.

the photo array, Gutierrez, at the McLean apartment building, and that she believed he had stayed in an adjacent apartment building. *Id.* at 22-24. She stated that Gutierrez was an emergency contact for the McLean apartment, and that she had his cell phone number. *Id.* at 43-45.

The apartment manager also informed the investigators that apartment 303 was not leased to Gutierrez, but to two other individuals, including a man named Felix Zambrano. *Id.* at 26, 42. Using another photo array, she identified Defendant Mercado as Felix Zambrano. *Id.* at 42.

On the evening of April 1, 2008, police interviewed Rodriguez at the Ramsey County jail. While his statement is not in evidence, he is alleged to have said that he picked up "the drugs" and brought them to Gutierrez and Lopez in St. Paul, and that he was to receive $400 for doing so. *Criminal Complaint*, ¶ 11.

## II.   ANALYSIS

Two of the four Defendants in this case, Gutierrez and Rodriguez, filed pre-trial motions. Their non-dispositive motions were previously addressed by separate Order. *See* Doc. Nos. 81 and 82. Their dispositive motions are considered below.

### A.   Gutierrez's Motions

#### 1.   Motions to suppress confessions and electronic surveillance evidence

Gutierrez's counsel stated at the motions hearing that his motions to suppress electronic surveillance and wiretapping evidence and to suppress confessions or statements in the nature of confessions were moot. The Court, therefore, recommends denial of these motions as moot.[3]

---

[3] With respect to the motion to suppress confessions, Gutierrez clarified that the Government represented that it would not introduce Gutierrez's post-arrest statements in its case-in-chief, but reserved the right to introduce such statements for impeachment purposes.

### 2.     Motion to suppress evidence obtained by search and seizure

Gutierrez argues that the warrantless entry into apartment 303 violated the Fourth Amendment, requiring suppression of all evidence found there.  The Government responds that Gutierrez lacks standing to contest the apartment search, that the independent source doctrine applies, and that the police's use of a key found on Mercado in apartment 303's lock did not implicate the Fourth Amendment.[4]  The Court finds that Gutierrez lacks the reasonable expectation of privacy in apartment 303 necessary to challenge the search.

The Court analyzes the Government's standing contention by examining whether Gutierrez "personally has an expectation of privacy in the place searched, and that his expectation is reasonable."  *U.S. v. Sturgis*, 238 F.3d 956, 958 (8th Cir. 2001) (quoting *Minnesota v. Carter*, 525 U.S. 83, 90-91 (1998)).  *See also Rakas v. Illinois*, 439 U.S. 128, 129-130 n.1 (1978) ("The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure."); *U.S. v. Gomez*, 16 F.3d 254, 256 (8th Cir. 1994) (same).

In applying the reasonable expectation of privacy standard, the Supreme Court has distinguished between overnight social guests in a dwelling, who generally have a reasonable expectation of privacy in that dwelling, and those more temporarily at a dwelling for commercial purposes, such as drug activity, who generally do not have a reasonable expectation of privacy in the dwelling.  *Cf. Minnesota v. Olson*, 495 U.S. 91, 96-100 (1990) (overnight social guest has legitimate expectation of privacy in dwelling in which he is staying), *and Carter*, 525 U.S. at 90-91 (short-term apartment visitor present to package cocaine no reasonable expectation of

---

[4] The Government did not raise the standing issue until after the pre-trial motions hearing, when it responded to Gutierrez's supplemental memorandum of law regarding the instant motion. The Court, therefore, granted Gutierrez the opportunity to respond to the Government's belated argument. *See* Doc. No. 88.  Gutierrez filed no such response.

5

privacy). *See also Sturgis*, 238 F.3d at 958-959 (hotel room visitor present for "purely commercial" drug-related purposes lacked reasonable expectation of privacy).

Here, Gutierrez did not have a reasonable expectation of privacy in apartment 303. He did not lease the apartment; nor does the record reflect that he ever stayed overnight there. Rather, the apartment manager had his name and cell phone number as an emergency contact for the lessees of the apartment, and stated that he had visited the apartment. Gutierrez's association with the apartment's lessees and undefined visits are not enough to confer upon him a reasonable expectation of privacy to contest the search of the apartment. *Sturgis*, 238 F.3d at 956 ("the Court [in *Carter*] suggested that a visitor usually lacks a rightful expectation of privacy when present in the home of another – unless the visitor stays overnight.") (citing *Carter*, 525 U.S. at 89-91). Even if he entered apartment 303 when he went up to the third floor of the McLean apartment building on April 1, which the current record does not reflect, such a short-term visit did not create a reasonable expectation of privacy, particularly if it was for commercial, drug-related purposes.[5]

The Court, therefore, recommends that Gutierrez's motion be denied based on his lack of a reasonable expectation of privacy in apartment 303. The Court need not, and therefore does not, reach the parties' additional arguments regarding the constitutionality of the search.

### 3. Motion to suppress identification evidence

Gutierrez moved to suppress "all identification evidence…." *Defendant's motion to suppress identification evidence* (Doc. No. 41). Although neither his motion papers nor motion

---

[5] The Court agrees with the Government that an analysis of the factors identified in *U.S. v. McCaster*, 193 F.3d 930, 932 (8th Cir. 1999), yields the same conclusion. Gutierrez has not shown a possessory interest in the apartment or the items seized from it. He has not shown that he could exclude others from the apartment. He has not shown that he took precautions to maintain the privacy of the apartment, or that he had key to it.

hearing argument specifically identified the evidence sought to be suppressed, the Court gathers from the motion hearing that he seeks suppression of the McLean apartment building manager's identification of him based on a photographic array. *See Motions Hearing Ex.*, Govt. Ex. 3.

The Court employs a two-step analysis to gauge the reliability of an identification based on a photographic array. *U.S. v. Daily*, 488 F.3d 796, 803 (8th Cir. 2007) (citing *U.S. v. Martin*, 391 F.3d 949, 952 (8th Cir. 2004)). "First the defendant must establish that the photographic arrays shown to the witness were 'impermissibly suggestive,' then the court inquires 'whether under the totality of the circumstances of the case, the suggestive confrontation created a very substantial likelihood of irreparable misidentification.'" *Id.*

The identification at issue here was not impermissibly suggestive. The investigators first showed the apartment building manager six individual, larger pictures, and next showed her the six-person photo spread on page one of Govt. Exhibit 3. She then identified Gutierrez. The photos used in the array depicted six individuals with similar physical characteristics. *See U.S. v. Donelson*, 450 F.3d 768, 773 (8th Cir. 2006). Nothing in the arrangement or order of the photos was impermissibly suggestive. *See U.S. v. Tripplet*, 104 F.3d 1074, 1080 (8th Cir. 1997). While the six larger pictures had identifying information next to them, the investigator covered this information while the apartment manager viewed the photographs. *Motions Hearing Tr.* at 23. Gutierrez specified no grounds for his motion, either in his motion papers or at the hearing, and the Court finds none.[6] The Court, therefore, recommends that this motion be denied.

### 4. Motion to sever

Gutierrez moves to sever his trial from those of his co-defendants. He did not specify the grounds for his motion in his motion papers, and simply stated at the motions hearing that it is

---

[6] Because the Court finds that the identification procedure was not impermissibly suggestive, it need not address prong two of the relevant inquiry. *See Daily*, 488 F.3d at 804.

based on *Bruton v. U.S.*, 391 U.S. 123 (1968) (admission in joint trial of co-defendant's confession implicating defendant violated defendant's Sixth Amendment confrontation right where co-defendant did not take the stand).

Gutierrez has not identified the source of possible *Bruton* error. The Court surmises that Gutierrez may be concerned about Rodriguez's April 1, 2008, statement given at the Ramsey County jail. The Court is ill-equipped to assess whether severance of Gutierrez's trial is warranted based on this statement without a better record regarding its content.[7] Regardless, Gutierrez has not explained why redaction of the statement along with a limiting instruction is insufficient to address *Bruton* concerns. *See Richardson v. Marsh*, 481 U.S. 200, 211 (1987); *U.S v. Heppner*, 519 F.3d 744, 751 (8th Cir. 2008). The Government represented at the hearing that, if the parties cannot agree on a redacted form of Rodriguez's statement, it will not introduce it. The Court, therefore, recommends denial of this motion.

### 5. Motion to dismiss indictment for duplicity

Gutierrez moves to dismiss the Indictment for duplicity. *See U.S. v. Moore*, 184 F.3d 790, 793 (8th Cir. 1999) ("Duplicity is the joining in a single count of two or more distinct and separate offenses.") (quoting *U.S. v. Street*, 66 F.3d 969, 974 (8th Cir. 1995)). Specifically, he argues that the Indictment improperly charges both a conspiracy to distribute (and to possess with intent to distribute) cocaine and methamphetamine, because the cocaine and methamphetamine charges carry different mandatory minimum sentences (five and 10 years

---

[7] The Government contends in its motion brief that Rodriguez stated that he had picked up "the drugs" and brought them to Gutierrez and Lopez. *Response of the United States to Defendants' Pretrial Motions* at 3. The Government's witness at the motions hearing, a special agent with U.S. Immigration and Customs Enforcement, testified that Rodriguez picked up drugs and then met with Mercado. *Motions Hearing Tr.* at 53-54. Thus, the actual content of the statement underlying this motion, including to whom Rodriguez stated he delivered the drugs and what drugs he delivered, is unclear.

respectively).[8]  *See* 21 U.S.C. § 841(b)(1)(A), (B).  Gutierrez contends that the jury could convict him on the conspiracy count without clearly determining that he was guilty of the methamphetamine-related activity giving rise to the higher minimum sentence.  He further contends that this scenario violates the rule set forth in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), that any fact that increases the penalty for a crime beyond its statutory maximum be submitted to the jury and proven beyond a reasonable doubt.

The Indictment is not duplicitous.  Including multiple objects (i.e. cocaine and methamphetamine) in a conspiracy count is not duplicitous where those objects constitute multiple ways of committing one offense and are alleged in the conjunctive.  *Moore*, 184 F.3d at 793 ("Here, count I charged Moore with committing one offense, conspiracy to distribute a controlled substance, in two ways, with marijuana and methamphetamine.  Enumerating the controlled substances did not render count I duplicitous.").  *See also U.S. v. Calderin-Rodriguez*, 244 F.3d 977, 985 (8th Cir. 2001) (same).  Such is the case here.

*Apprendi* does not change the analysis.  While the cocaine and methamphetamine amounts charged in the Indictment carry different maximum and minimum sentences, Gutierrez has not argued that the Indictment exposes him to a sentence beyond the applicable statutory

---

[8] Count I of the Indictment states:

> On or about April 1, 2008, in the State and District of Minnesota, the defendants … did unlawfully, knowingly and intentionally conspire with each other and with other persons known and unknown to the grand jury to distribute and to possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine, a controlled substance, and 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A) and 846.

maximums, a scenario closer to *Apprendi*.[9] Rather, he argues that the appropriate statutory minimums might not be observed due to the inclusion of drug amounts carrying differing minimum sentences in the Indictment. Judicial sentencing discretion regarding statutory minimums has received considerably more forgiving scrutiny than that regarding statutory maximums. *See McMillan v. Pennsylvania*, 477 U.S. 79, 90 (1986) (Pennsylvania statute imposing mandatory minimum sentence upon judge's preponderance of evidence finding does not violate Sixth or Fourteenth Amendments); *Apprendi*, 530 U.S. at 487 n.13 (expressly declining to overrule *McMillan*); *Harris v. U.S.*, 536 U.S. 545, 563 (2002) ("*Apprendi's* conclusions do not undermine *McMillan's*."). *See also U.S. v. Aguayo-Delgado*, 220 F.3d 926, 933 (8th Cir. 2000) ("The rule of *Apprendi* only applies where the non-jury factual determination increases the maximum sentence beyond the statutory range authorized by the jury's verdict."); *U.S. v. Kelly*, 519 F.3d 355, 363 (7th Cir. 2008) ("statutory minimums do not implicate *Apprendi*").

The Court, however, need not decide the sentencing concern Gutierrez raises in the form of duplicity. His concerns stem from *possible* imprecision that *could* result if a jury renders a general guilty verdict, and does not specify the basis for the verdict, i.e. whether a conspiracy regarding methamphetamine or cocaine, or both, has been proven. Here, unlike the sentencing enhancing fact in *Apprendi*, the Indictment explicitly charges the drug types and amounts giving rise to the differing sentencing ranges. Gutierrez has not explained why a special verdict form requiring the jury to specify whether a conspiracy was proven as to methamphetamine, cocaine,

---

[9] The Government explains that the sentencing guidelines prescribe far less onerous maximums than the statutory maximums at issue (40 years under 21 U.S.C. § 841(b)(1)(B), and life under 21 U.S.C. § 841(b)(1)(A)).

10

or both, would not address the potential imprecision he cites.[10] *E.g., Jones v. U.S.*, 306 F. Supp. 2d 142, 153 (D. Conn. 2003) (use of special verdict form allowed court to sentence defendant for higher punished drug offense in dual object conspiracy case). *Cf. Edwards v. U.S.*, 523 U.S. 511, 515 (1998) (upholding dual object conspiracy sentence based on general verdict, but noting that such a sentence could be problematic where it exceeded the statutory maximum for the least-punished object of the conspiracy). The Government has explicitly proposed the use of such a form. The Court, therefore, finds that the sentencing concern Gutierrez raises is, at this point, hypothetical, and can be addressed through appropriate trial measures. *See also U.S. v. Robinson*, 241 F.3d 115, 121 (1st Cir. 2001) (theoretical exposure to higher sentence does not implicate *Apprendi*). The Court, therefore, denies Gutierrez's motion to dismiss the Indictment based on duplicity.

   B.   **Rodriguez's Motions**

      1.   **Motion to suppress statements, admissions, and answers**

Rodriguez moves to suppress his post-arrest statement given at the Ramsey County jail on April 1, 2008. He contends that his statement was made without the benefit of counsel and that it was coerced in violation of his Fifth and Sixth Amendment rights.

In *Miranda v. Arizona*, 384 U.S. 436, 467-70 (1966), the Supreme Court held that "prior to initiating a custodial interrogation, the police must protect a suspect's Fifth Amendment privilege against self-incrimination by warning him that the State intends to use any statement to secure a conviction and that he has the right to remain silent and to have counsel present…." *Beck v. Bowersox*, 362 F.3d 1095, 1099 (8th Cir. 2004). A criminal suspect may waive his

---

[10] Rodriguez's counsel acknowledged at the motions hearing that a special verdict form would address the duplicity concern he and Gutierrez raise. *Motions Hearing Tr.* at 58.

11

*Miranda* rights. *U.S. v. Phillips*, 506 F.3d 685, 687 (8th Cir. 2007). Any such waiver must be "voluntary, knowing, and intelligent." *Id.*

At the motions hearing, the Government introduced a *Miranda* waiver form, written in both English and Spanish. *Motions Hearing Ex.,* Govt. Ex. 1. One of the investigators present at Rodriguez's interview testified that an investigator read the entire form out loud to Rodriguez in Spanish after determining that Rodriguez's English was limited. *Motions Hearing Tr.* at 27, 31. Rodriguez then signed a waiver of his *Miranda* rights. *Id.* While Rodriguez asserts that his statement was coerced, he does not explain how. The Court finds no evidence of such coercion or other circumstances rendering the *Miranda* waiver ineffective. *See U.S. v. Gallardo*, 495 F.3d 982, 991 (8th Cir. 2007) (fact that written waiver was in defendant's native language carries "significant weight" in considering whether waiver was knowing and voluntary). The Court, therefore, recommends denial of this motion.

### 2.   **Motion to sever**

Rodriguez requests that his trial be severed from those of his co-Defendants. His counsel contended at the motions hearing that redacting Rodriguez's jailhouse statement to omit reference to his co-Defendants will so distort the statement as to render it inaccurate. Rodriguez does explain his conclusory assertion. Nor has he submitted sufficient evidence regarding the actual content of the statement at issue, much less described how redaction would impermissibly distort it or prevent him from introducing "substantially exculpatory" evidence. *See U.S. v. Ortiz*, 315 F.3d 873, 900 (8th Cir. 2002); *U.S. v. Comeaux*, 955 F.2d 586, 590 (8th Cir. 1992) ("severance is required only where admission of the statement in its edited form distorts the meaning of the statement or excludes information substantially exculpatory of the defendant") (quotation omitted). The Court, therefore, recommends denial of Rodriguez's motion.

### 3. Motion to dismiss indictment for multiplicity

Like Gutierrez, Rodriguez moved to dismiss the indictment for duplicity.[11] For the same reasons set forth above in the context of Gutierrez's identical motion, the Court recommends that Rodriguez's motion be denied.

## III. RECOMMENDATION

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

A. Gutierrez's motion to suppress confessions or statements in the nature of confessions (Doc. No. 38) be **DENIED AS MOOT**.

B. Gutierrez's motion to suppress electronic surveillance and wiretapping evidence (Doc. No. 39) be **DENIED AS MOOT**.

C. Gutierrez's motion to suppress evidence obtained by search and seizure (Doc. No. 40) be **DENIED**.

D. Gutierrez's motion to suppress identification evidence (Doc. No. 41) be **DENIED**.

E. Gutierrez's motion to sever defendant (Doc. No. 54) be **DENIED**.

F. Gutierrez's motion to dismiss indictment for duplicity (Doc. No. 67) be **DENIED**.

G. Rodriguez's motion to suppress statements, admissions, and answers (Doc. No. 59) be **DENIED**.

H. Rodriguez's motion to sever defendant (Doc. No. 60) be **DENIED**.

I. Rodriguez's motion to dismiss indictment for multiplicity (Doc. No. 64) be **DENIED**.

---

[11] Rodriguez styled his motion as based on multiplicity, but clarified at the motions hearing that he bases it on duplicity.

Dated: June 30, 2008.

    s/ *Jeanne J. Graham*
JEANNE J. GRAHAM
United States Magistrate Judge

**NOTICE**

    Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by **July 15, 2008**. A party may respond to the objections within ten days after service thereof. Any objections or responses filed under this rule shall not exceed 3,500 words. The district court judge shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall forfeit review in the United States Court of Appeals for the Eighth Circuit. Unless the parties are prepared to stipulate that the district court judge is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this report and recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.